# Third District Court of Appeal

## State of Florida

Opinion filed July 26, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-0392
Lower Tribunal No. 15-13343
_____

**Hugo Montero,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Charles Johnson, Judge.

Carlos J. Martinez, Public Defender, and Jonathan Greenberg and Bradley Horenstein, Assistant Public Defenders, for appellant.

Pamela Jo Bondi, Attorney General, and Joanne Diez, Assistant Attorney General, for appellee.

Before LAGOA, SCALES and LUCK, JJ.

LUCK, J.

After punching a nightclub manager in the head causing him to suffer permanent brain damage, Hugo Montero, convicted of aggravated battery,

contends the trial court should have acquitted him of that charge because he didn't intend to hurt the manager so badly. Having told the manager he was going to kill him, and almost doing so, we conclude there was competent substantial evidence supporting the jury's verdict that Montero intended to cause great bodily harm.

On the evening of June 29, 2015 (and into the early morning hours of June 30), Montero was at the Fox Hole bar in South Beach. In an effort to talk to women at the bar, Montero followed one particular female patron to the restroom. The manager, after receiving a complaint, spoke to Montero and Montero agreed to stop bothering the woman he followed.

But he didn't stop. Montero, again, bothered the same woman he had followed to the restroom. The manager asked Montero to leave the bar; when Montero refused, the manager had the security guard escort Montero outside. Montero became angry, screamed that he was not leaving the bar, spit in the security guard's face, and threatened to kill the manager and security guard.

Montero eventually calmed down and walked outside the bar with the security guard, but then Montero turned around to walk back in. The security guard told Montero to leave; in response, Montero was irate, screamed profanities at the security guard and manager, again threatened to kill the security guard, and punched the security guard in the face. The security guard – not a small man at six feet, one inch tall and weighing three hundred fifty pounds – held his arm out to

2

keep Montero away but Montero punched at the security guard's arm, got in a fighter's stance with his fists out, and taunted the security guard to fight. Montero then calmed down, and tried to get back into the bar, but the security guard stood in the way.

The manager, in the meantime, went inside the bar and called law enforcement. As he came back outside, Montero punched the manager's head. The punch knocked the manager unconscious, causing the manager to fall back and hit his head on the ground. A CAT scan showed that the manager's brain was bleeding, bruised, and swollen. A medical expert testified at Montero's trial that the manger suffered a permanent injury to his brain. The manager, still, has language and memory problems, migraines, blurry vision, and tinnitus.[1]

Montero's sole contention on appeal is that the trial court erred in failing to grant his motion for judgment of acquittal. The aggravated battery statute, Montero argues, required that the state prove he intended to cause the manager great bodily harm, and because there was no evidence he had such an intent, his punch was only worth a felony battery.

"[W]e review the trial court's denial of [the defendant]'s motion for judgment of acquittal de novo, reversing only where the conviction is not

---

[1] "Tinnitus is generally defined as a subjective sensation of sound, such as ringing or buzzing, in one or both ears." Rumminger v. Astrue, No. 2:10-CV-682-FTM-29, 2011 WL 6004078, at *1 (M.D. Fla. Nov. 30, 2011).

supported by competent, substantial evidence. The conviction is supported by sufficient evidence where a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt after viewing the evidence in the light most favorable to the State." Knight v. State, 186 So. 3d 1005, 1012 (Fla. 2016).

Florida statute section 784.045, the aggravated battery statute Montero was convicted of violating, provides that "[a] person commits aggravated battery who, in committing battery . . . intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement." § 784.045(1)(a)1., Fla. Stat. (2015). The Florida Supreme Court has separated this out into two elements in the standard jury instruction for aggravated battery:

1.      The defendant intentionally touched or struck the victim against his will; and

2.      The defendant, in committing the battery, intentionally or knowingly caused great bodily harm to the victim, or permanent disability. Fla. Stnd. Jury Instr. (Criminal) 8.4.

Montero concedes he intentionally punched the manager against his will.[2] The question for us is whether there is competent substantial evidence supporting

_____

[2] In Knight, the defendant conceded there was direct evidence of his dominion and control over contraband. Knight, 186 So. 3d at 1012. With that concession, the Florida Supreme Court explained, his "case cannot be considered wholly circumstantial – despite the circumstantial evidence of the knowledge element.

the jury's finding that Montero intended his punch to cause great bodily harm or permanent disability to the manager. We conclude that there was.

In reviewing the defendant's intent, which is "generally a jury question," we look to the "extent and nature of a victim's injuries," the "circumstances peculiar to each situation," the "amount of force used," and "the manner of attack." State v. Gee, 624 So. 2d 284, 285 (Fla. 2d DCA 1993); McKnight v. State, 492 So. 2d 450, 451 (Fla. 4th DCA 1986). Even a single punch to the face, reviewing these factors, can be enough to constitute an aggravated battery. See Gee, 624 So. 2d at 285 (reversing trial court's dismissal where the facts showed "[a] crowded barroom confrontation culminated with defendant striking the victim with a single blow to the right side of his face, causing him to fall to the floor"); McKnight, 492 So. 2d at 451 (affirming aggravated battery conviction where "only a single blow was struck").

In Gee, for example, the defendant and victim were in a crowded barroom, and in the midst of a confrontation, when the defendant hit the victim in the face, causing the victim to fall to the floor. Gee, 624 So. 2d at 285. The victim suffered a broken neck and complete paralysis. Id. In McKnight, the defendant struck a

Therefore, the circumstantial evidence standard of review does not apply." Id. Here, too, there was direct evidence that Montero intentionally struck the manager (the first element): the manager testified that he did; so did the security guard; and there was a video of the punch. Because there was direct evidence of one element, the circumstantial evidence reasonable-hypothesis-of-innocence standard does not apply.

seventy year old victim, resulting in a serious brain injury.  <u>McKnight</u>, 492 So. 2d at 451.  And in <u>Sagner v. State</u>, 791 So. 2d 1156 (Fla. 4th DCA 2001), where the defendant threw a bottle at his victim resulting in an aggravated battery conviction, he and his target were in a "heated discussion," they were "name calling," and the defendant stared him down.  <u>Id.</u> at 1159.  The bottle, moreover, was thrown "pretty hard."  <u>Id.</u>

Here, too, we have many of the same facts showing that Montero intended to cause the manager great bodily harm.  Montero angrily confronted the manager and security guard about being thrown out of the bar and cursed at them.  Montero spit and hit the security guard and kept coming at him even after Montero was pushed away.  Montero hit the manager after the manager left to call the police because Montero refused to leave.  The force of Montero's punch was hard enough, the manager's doctor testified, to cause the concussion and the permanent brain damage that followed.

Finally, Montero told the manager and security guard that he would kill them.  Unsurprisingly, the Florida courts have held that a defendant's statement, "I will kill you," is evidence of the defendant's intent to kill the victim.  <u>See</u> <u>Blanco v. State</u>, 447 So. 2d 939, 940 (Fla. 3d DCA 1984) (defendant's statement, "next time I'll kill you," was evidence of intent to commit attempted first degree murder); <u>see also</u> <u>Provenzano v. State</u>, 497 So. 2d 1177, 1181 (Fla. 1986) (finding

6

sufficient evidence of premeditation where the defendant "removed a loaded shotgun from a pocket inside his coat, and screamed 'I'm going to kill you, M_____ F_____, I'm going to kill all of you,' and fired the fatal shot when Wilkerson was two to three feet away."); Caraker v. State, 84 So. 2d 50, 51 (Fla. 1955) ("The intent to kill may be established by a number of circumstances, such as, the fact that the weapon is directed at some vital spot on the assaultee's body as was done here, or the intent may be affirmatively shown by the actual expressions of the one committing the assault, such as, 'I am going to kill you.'" (citation omitted)); Duba v. State, 446 So. 2d 1167, 1168 (Fla. 5th DCA 1984) (finding "sufficient competent evidence for the charge of attempted kidnapping to go to the jury and from which the jury could infer (as it did) that the defendant had the specific mental intent to inflict bodily harm upon, or to terrorize, the victim as required by the kidnapping statute" where the defendant "driving a van, pointed an air pistol at a victim and said, 'Get in the van or I'll kill you.'").  While Montero did not kill the manager – he only caused a bleeding, bruised, and swollen brain, permanent brain damage, slurred speech, migraines, and blurry vision – his statements that he wanted to are also competent substantial evidence supporting the jury's verdict that Montero intended to cause the manager great bodily harm and permanent disability.

Montero responds with the I-didn't-really-mean-it defense. Quoting from the movie Twelve Angry Men, where one character says I'm going to kill you and doesn't actually mean it, Montero contends that he, too, didn't mean it when he told the manager he was going to kill him; it was just a figure of speech. Montero misunderstands the standard of review. On a judgment of acquittal motion, we view the evidence in the light most favorable to the state in determining whether there's competent substantial evidence supporting the verdict. Here, viewing the I-will-kill-you threat that way, Montero meant what he said that he will kill the manager. This was competent substantial evidence of Montero's intent to cause great bodily harm.

Montero also contends, relying on T.S. v. State, 965 So. 2d 1288 (Fla. 2d DCA 2007), that his punch was reflexive and he therefore did not have the intent to cause great bodily harm when he hit the manager. In T.S., the defendant punched the victim in "a quick, almost reflexive response to having tea thrown in his face." Id. at 1290. We have no trouble distinguishing T.S. from this case. Here, unlike in T.S., the manager did nothing to provoke a response from Montero other than walking out the front door of the bar. The manager did not throw anything at Montero; the manager did not try to hit Montero or restrain him. Montero's punch was not a reflex to something the manager did. Also here, unlike in T.S., Montero and the manager had much more than a verbal argument before the battery.

Montero was warned about bothering women at the bar; he was kicked out of the bar; he fought with and cursed at the manager and security guard; he spit; punched the security guard; had to be restrained; tried to get back into the bar; threatened to kill the manager and security guard; and punched the manager in the face so hard that the force could have caused a concussion and brain swelling.

This, together, was competent substantial evidence from which the jury could find that Montero intended to cause great bodily harm or permanent disability when he punched the manager. Montero's conviction and sentence are, therefore, affirmed.

Affirmed.